## WOOD *et al. vs.* ISOM *et al.*

1. One party to a suit may invoke allegations made in the pleadings of the other to his benefit, and dispense with other proof thereof than the averment of his adversary.

2. If one who holds land has some mental weakness, and another claims the land, and fraudulently uses that weakness as a means of coercing the will of the owner so as to induce him to make a deed to a portion thereof, such grantor may have his conveyance set aside.

3. If one *bona fide* claims land held by another, though the title of the claimant may be imperfect, he may make a valid compromise with the holder and receive a deed to a portion of the land, even though the holder had no other motive for making the conveyance than the belief that under the Scriptures a man ought to give up his property rather than go to law. It is not inequitable to invoke the belief of one's adversary in biblical teachings in order to effect a settlement, provided no deceitful means, or artful practices, or fraudulent representations, or concealments, be used.

4. While it is the duty of an agent to keep his principal informed concerning the business involved in his agency, there is no duty requiring the principal to communicate his business to his agent, unless he desires to do so.

5. Though generally one party to a transaction cannot testify to matters which occurred between him and the other party since deceased, yet he is competent to rebut testimony concerning transactions or conversations testified to by living witnesses introduced by the opposing party.

(*a.*) The certificate of the presiding judge as to the grounds of a motion for new trial is conclusive. Although a stenographer may have taken down the testimony, and the brief of evidence may have been approved by the judge, yet statements therein of objections made by counsel and rulings of the court will not overcome or vary the certificate of the judge to the grounds of the motion for new trial.

6. The case was fairly submitted by the charge of the court.

(*a.*) When the ends of justice require it, the presiding judge may recall the jury and re-charge them ; nor will it work a new trial if he reads to them their oath as jurors.

7. The verdict is sustained by the evidence.

Pleadings. Evidence. Equity. Fraud. Title. Principal and Agent. Contracts. Witness. Practice in Su-

perior Court. Jury. Before Judge HILLYER. Fulton Superior Court. April Term, 1881.

Joseph Wood *et al.*, as heirs of Elias Wood, deceased, filed their bill *vs.* John Isom, Hulsey & Tigner, Jno. R. Wallace, Benj. Williams, A. J. Atkinson and S. L. Mosely. The bill, as amended, alleged that Elias Wood, during the year 1847, became possessed of a tract of land, lot number 250, in the 17th district of Fulton county, containing 202 1-2 acres. That he bought said land from D. J. Connelly, paying a full price therefor and taking a fee simple warranty deed thereto. That he went into possession at once and continued in peaceable possession until April, 1870. That about April, 1870, when said Elias, being about sixty years of age, had become greatly enfeebled and diseased, so as to be totally unfitted for business, and especially to transact business with shrewd, sharp men anxious to deceive him, and when he had become thoroughly superstitious, giving his entire mind to religion, and surrendering all interest in earthly matters, (he having always been unable to either read or write, and utterly averse to any form of litigation), he was approached by John Isom and W. A. Tigner. Complainants aver that previous to this time said Isom had purchased, or pretended to have purchased, a claim of some nature to the property above mentioned, though complainants are unable to state what it may be, but they do say that it is worthless. That said Isom, knowing the invalidity of his claim, but wishing to defraud and cheat said Elias, came to Atlanta and employed as his assistants Hulsey & Tigner, attorneys at law. That said Tigner was also a minister of the gospel, and because of the peculiar disposition of the mind of said Elias, well fitted for his part in the fraud about to be perpetrated. That by means of threatened suits, or bills, of so called religious warnings, of repeated visits, remonstrances and entreaties, the above named confederates so wrought on the weak and darkened mind of

said Elias that they induced or forced him to convey to said Isom all of said tract, except fifty acres in the southeast corner thereof. That said conveyance was wholly without consideration, and was the result of gross imposition and deceptions practiced on said Elias by said Isom, Hulsey & Tigner, and of the fanatical state of said Elias' mind. That afterwards the land so obtained was divided between Isom, Hulsey & Tigner, Isom taking 52 2-3 acres, and Hulsey & Tigner 100 acres. That Isom, in January, 1872, conveyed his part to John R. Wallace. That Wallace conveyed to S. L. Mosely in 1875, and Mosely conveyed to Atkinson, who now holds the land under bond for title from Mosely. That Hulsey & Tigner conveyed their share to Benj. Williams, on December 10th, 1873, who is now in possession of the same. That all of said parties had notice of the fraud and wrong done, etc. That said Elias lingered in great pain of body and mind until the year ——, when he died, leaving complainants as his sole heirs, and leaving no will. That on March 10th, 1874, complainants brought actions of ejectment *vs.* said Williams and one Crawford Munroe for said lands in Fulton superior court, and that said suits are still pending. The bill further charges the various defendants with rents and profits of the land from the time it came into their possession to the termination of this cause.

The prayers are: That the conveyance from Elias Wood to Isom be decreed to be null and be set aside, and that it be brought into court and cancelled. That all the other conveyances mentioned be set aside, and title be decreed to be in complainants. That defendants be compelled to account for rents and profits. That in the event there can be no recovery from Benj. Williams a money decree be had against Hulsey & Tigner. That deed from Wood to Isom be produced and delivered up. That ejectment suits be stayed and general relief be given.

Exhibited to the bill was a deed from Elias Wood to

John Isom, dated April 23d, 1870; consideration expressed as being $800.00, conveying land in dispute.

The following answers were filed :

W. A. Tigner answered, in brief, as follows : Denies that he was a minister at the time of the conveyance to Isom. Says he never saw Elias Wood before the day he and his sons came to respondent's office to settle litigation about land in controversy. Prior to that time John Isom had placed his claim in the hands of Hulsey & Tigner for suit, and suit had been commenced by them *vs.* Wood. Isom told Hulsey & Tigner that he had made a proposition of settlement to Wood, and instructed them to accept it if Wood desired to accede to it, and to settle with Wood. Denies that he gave Wood any religious warnings or remonstrances to induce the trade. The old man and all his boys but one came to the office and announced that he had come to accept Isom's proposition. Hulsey & Tigner had no agency in bringing him there; he came with his sons, and if he was under any spell or religious influence, or any undue influence from any source, his sons ought to have known it and communicated it to Hulsey & Tigner; but nothing was said about it to them, and they, present and taking part in the transaction, seemed to think and acted as if they thought the old gentleman was doing right. Hulsey & Tigner did not make the offer of compromise; they simply acted as directed by Isom to accept for him the trade proposed by him ; they had nothing to do, and gave no advice about the matter. It is respondent's recollection that old man Wood stated there before the trade was made, that Connelly did not have title to the land, but that he had repaid what he paid to Connelly, by the use of it. After the trade, the old man rented the place from Isom and held it as his tenant the balance of the year. Hulsey & Tigner further agreed with the old man and the boys to try to get Isom to sell the land to the old man, which they did try to do. The old man and the

boys left the office perfectly satisfied, so far as we knew or could judge, and there was not the slightest evidence of dissatisfaction on their part. Hulsey &- Tigner took only one third as a fee, and bought one third from Isom afterwards. Denies all notice and all charge of fraud. Respondent did not hear of any dissatisfaction about the matter until long after the trade, when he learned that some of the boys said they were going to sue for the land as soon as the old man died. This was long after Hulsey & Tigner had bought of Isom. Hulsey & Tigner sold their part of the land to Williams and had to take $500.00 less than it was worth on account of the talk of the Wood boys at and about that time about suing for the land. Bill charges too much for rent, etc.

Jno. R. Wallace answered in brief as follows: Knows nothing as to how Elias Wood went into possession of the land. Denies that said Elias was greatly enfeebled and incapacitated for business, giving his entire mind to religion, but on the contrary respondent says said Wood was capable of managing his property with care, skill and ability up to the time of his death. Respondent bought fifty acres of land in dispute from Isom, and paid —— dollars for it. Respondent bought in good faith, and denies all notice. Believed Isom had a perfect title, and he never heard even a rumor to the contrary till long after the purchase and payment for the same.

Benj. Williams answered, in brief, as follows: Denies that Wood was imbecile. Admits purchase from Hulsey & Tigner. Denies any and all notice of any fraud, etc. When respondent bought Elias Wood was in life. Said Wood knew respondent was negotiating for the land, and he never gave respondent notice that title was not good in said Hulsey & Tigner.

W. H. Hulsey's answer was substantially the same as that of W. A. Tigner.

S. L. Mosely's answer admits his purchase of fifty acres from Wallace in 1875. Denies any notice.

Evidence was introduced in support of the pleadings and answers, which it is unnecessary to set out here. The jury found for the defendants. Complainants moved for a new trial on the following among other grounds:

(1.) Because said verdict is contrary to equity and good conscience.

(2.) Because the court charged the jury as follows: " Either party has the right to invoke in his favor or for his benefit any allegations that may be in the pleadings of the other party, as for instance, the bill charges that, as a part of the series of transactions in question, a certain quantity of the land in dispute was conveyed to Messrs. Hulsey & Tigner. In the opinion of the court that dispenses with the necessity of the defendants, introducing the deed showing title in them. But this circumstance does not add any force to other averments in this bill, they still have to be proved."

(3.) Because the court charged the jury as follows : ' " If Mr. Wood was a person who had some particular weakness of mind, if there was a weak spot in his character with reference to the transaction or line of transactions in question, and if the other party, Isom or his assistants, knew that, and if they fraudulently took advantage of it and used that as a means to coerce his will and induce him to do that which he otherwise would not have done, then he himself, at any time before he died, could have reversed the transaction."

(4.) Because the court charged the jury as follows: "If Mr. Isom believed that he had a true title, and was suing and pressing that title in good faith, he honestly believing, and was clean in his heart and purpose, and really believed that he had a right to recover, he would have a right to accept a deed and compromise in the dispute with Mr. Wood, even though Mr. Wood had no other motive for making the conveyance than the belief that under the Scriptures a man ought to give up his property rather than to go to law."

(5.) Because the court charged the jury as follows: "The court is of the opinion that the circumstance which you will find in the record before you of the court down the country, that the final decree was not made in term time, the mere circumstance that the final decree had not been made in term time would not by itself be sufficient to show bad faith on the part of Isom." [Isom claimed by virtue of a partition of certain lands as the estate of one Shanks.]

(6.) Because the court charged as follows: "If he (Isom) could not recover under Shank's title, and knew that he could not, but merely used that as a means of attack on Mr. Wood to get his land away from him, and if Mr. Wood was afflicted with weakness of mind so as to render him a prey to a scheme of that sort, and if Isom fraudulently took advantage of him, and in that manner procured the deed from him, then the deed is not binding on Wood, and he could have set it aside." [The Shank's title was that set up by Isom, and by virtue of his claim the compromise was affected.]

(7.) Because the court charged as follows: "It is the duty of the agent to communicate and keep his principal informed, but the principal is under no obligation to communicate to the agent; and in this case Mr. Isom would be under no obligation to tell Hulsey & Tigner any thing further about his business than he chose to do."

\* \* \*

(14.) Because the court erred in allowing W. H. Hulsey and W. A. Tigner to testify, over the objection of complainants' counsel, that Elias Wood said in their office at the time the deed was made from him to Isom, that he had always intended to give up the land when the true owner came for it, etc. [In approving this ground of the motion the court added a note which is set out in the 5th division of the decision.]

(15.) Because the court, after the case had been argued and the jury had retired, and after the jury had been considering the case in their jury room for many hours, re-

called the jury and read over to them their oath, saying to them that sometimes lawyers in administering to them the oath did so indistinctly. This was done in the presence of counsel, but without consulting the attorneys on either side, and without announcing to them the intention of the court to recall the jury.

The motion was overruled, and complainants excepted.

COLLIER & COLLIER; H. C. PEEPLES, for plaintiffs in error.

MCCAY & ABBOTT, for defendants.

JACKSON, Chief Justice.

This bill was brought by the heirs at law of Wood against Isom and others. The object of the bill is to set aside certain deeds, some as fraudulent, and others as taken with notice of the fraud of the original grantee, or in the event there was no notice to affect the purchasers, then to make the grantors to them account for the value of the lands so held from them by innocent purchasers without notice. The gravamen of the bill rests on the allegation that Isom took undue advantage of alleged weakness of mind in Wood, springing from deep religious convictions of duty, and that Hulsey & Tigner, the counsel of Isom, confederated with him to defraud Wood by taking advantage of the same alleged imbecility. The answers denied every thing of the sort, and the main issue was fraud or no fraud in the original contract for the land between Wood and Isom and his counsel. Various other points arose out of issues affecting subsequent purchasers as to the *bona fides* of their several purchases, and how far they had notice, and how far what they knew affected each of them. The jury found a general verdict for defendants, the effect of which is to find no fraud in the original purchase, and to that question and rulings in respect to that issue we first address ourselves.

1, 2, 3, 4. Many grounds of error are laid in the motion for a new trial, all of which are found in the report of the case, but so far as they affect the main issue and relate to the charge of the court on that issue, they are the 2d, 3d, 4th, 5th, 6th and 7th.

In respect to them all we are unable to see error in them, and the charge as a whole on the points made in the grounds above mentioned, meets our approval.   The 2d simply recognizes the right of one party to invoke an allegation of the other in the pleadings to his benefit, and dispense with other proof thereof than the averment of his adversary.   The 3d lays down a correct rule of law on which Wood in his lifetime could have set aside the conveyance had he sued, in this, that if Isom or his counsel or assistants took advantage of the weakness of Wood and fraudulently used it to coerce his will, and cause him do what he would not have done otherwise, then Wood could have set the deed aside.   The 4th and 5th relate to Isom's title to the land, and are to the effect that though that title may have been imperfect, yet if Isom believed it good, he had a right to compromise his claim with Wood and get the conveyance to part of the land in dispute, " even though Wood had no other motive for making the conveyance than the belief that under the Scriptures a man ought to give up his property rather than go to law."   Surely it is not inequitable in a man holding an honest claim to property even to ask his adversary, rather than go to law, to settle in accordance with the word of God, and to invoke to his aid the faith and piety of his adversary to bring about the settlement, provided he use no deceitful means and artful practices, or false and fraudulent representations or concealments.   And the court fully guards the above proviso in the charge excepted to in the 6th ground, which is undoubtedly law, and good law, and as fair and favorable to complainants as equity will go.   The 7th simply lays down the rule, that while it is the duty of the agent to communicate to and keep the principal informed, the

principal is not bound to tell his agent every thing about his business, and applies the rule to this case by saying that Isom was under no obligation to tell Hulsey & Tigner any thing further about his business than he chose to do.

5. The 14th ground relates to the competency of Hulsey & Tigner to testify, as Wood was dead. Their competency turns on the particular facts to which they were called and the circumstances under which their testimony was elicited. As set out in the ground, the objection is not clear. It is thus stated there : " To testify over the objection of complainants' counsel that Elias Wood said in their office, at the time the deed was made from him to Isom, that he had always intended to give up the land when the true owner came for it," etc. It must be considered in connection with the circumstances under which the tes_timony was admitted.

The presiding judge thus details them : " The court certifies that the witnesses, Hulsey and Tigner, were allowed, after objection made, to testify to nothing transpiring between them and the deceased, save in rebuttal of the testimony of living witnesses, who had testified for complainants to the same, or to parts of the conversations or dealings. This was the distinct ruling of the court, elaborately explained, the court referring to the physician's case, Georgia Reports, and the Springfield case ; and if any thing further was testified by these witnesses, or allowed to stand as their evidence, it was because counsel did not point it out or object to it."

With this explanation of the presiding judge, made in regard to the correctness of the grounds of the motion, and, therefore, controlling, there is clearly no error on this ground.

What the judge says and certifies, this court must regard as the truth of the case. Otherwise we should be at sea in all cases where recollection of what transpired varies ; nor can we look at the notes of a stenographer to

vary the statement of the judge, even if they did so. The brief of the testimony alone, as taken down by the stenographer, is what governs; and even that must be certified by the judge; but the current of what takes place in the way of objections to testimony or motions to rule it out, is no part of the testimony itself, and must be looked for alone in the certificate of the judge.

6, 7. On this first and main issue, the case, we think, was fairly and fully submitted in the judge's charge. He had the right to recall and recharge the jury, if he thought the ends of justice demanded it, and to repeat in their hearing the oath they had taken in respect to the trial of the cause. The jury have passed on all the facts and rendered their verdict, and after a careful examination of this voluminous record, we see no error of law on that issue, and nothing to induce the belief that other than an honest verdict was rendered. It is rather matter of regret than of complaint that there are not more men of the simple faith of the ancestor of complainants, who preferred to yield something of right rather than violate what he believed to be the word of God, and who settled quickly with his adversary whilst in the way with him, rather than go to law with his brother, especially as in good conscience he doubted the complete justice of his own title. He has gone to an inheritance compared with which earthly lands are nothingness and vanity, and has left his children a legacy richer. than money—the legacy of the good name of an humble, single-eyed, undoubting servant and follower of Christ.

It is unnecessary to consider the issues in regard to subsequent purchasers.

Judgment affirmed.